OPINION ON RECONSIDERATION
HERSEY, Chief Judge.
We have this case for reconsideration pursuant to the Florida Supreme Court’s opinion of July 17, 1986, 491 So.2d 1143, directing this court to reconsider its prior opinion in light of State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Appellant was tried for second degree murder in May 1982. The record discloses that Dr. Ronald Wright, the Broward County Medical Examiner, testified that at 3:45 a.m. on January 30, 1982, he investigated the shooting death of James Williams, Jr., in Fort Lauderdale. Williams was six feet tall and weighed 178 pounds. He was very intoxicated at the time of death, with a blood alcohol level of .30. Death occurred from gunshot wounds to Williams’ head and chest. The head wound would have been almost immediately incapacitating. Wright could not tell in what order the wounds were inflicted.
Officer Chandler and Police Aide Knut-ten, crime scene technician, responded to the scene shortly after 3:00 a.m. Neither observed any weapon, or anything that could be used as a weapon, in the vicinity of the body. Knutten found a closed pocketknife in the victim’s right front pants pocket.
Three eyewitnesses to the shooting testified on behalf of the state. James Wilson, Jr., testified that the shooting took place at a bar called SaRob’s. Wilson, who manages Little Joe’s Bar a few blocks away, stopped by SaRob’s at 2:45 a.m. on January 30, 1982, and engaged in conversation with some friends outside. A crap game was in progress a short distance away. Wilson saw the victim walk away from the crap game with some money in his hand. Appellant then ran over to the victim and demanded the money. When the victim refused, appellant pointed a gun at his face and fired. The victim grabbed his head and fell to his knees. Appellant then fired two more shots, kicked the victim over, and removed money from his pockets. Wilson watched the shooting from about ten feet away. He further testified that the victim had nothing in his hands and did not try to attack appellant. .Wilson later picked appellant out of a lineup. '
Eddie Irvin testified that he had spoken with Williams earlier at SaRob’s and was looking for him when he came upon a crowd outside and saw appellant shoot Williams. Irvin was about fifteen feet away when he saw the shooting. He also testified that the victim had nothing in his hands and made no move toward appellant. Irvin saw appellant go through the victim’s pockets and remove some money. He, too, later identified appellant in a lineup.
Willie Hogan testified that he did not see appellant fire the first shot, but he came upon the scene immediately afterwards. Appellant was standing in front of Williams with the gun in his hand, and Williams was bent over, holding his head and shaking it. Hogan asked appellant not to shoot again, but appellant disregarded his request. Appellant then indicated that the victim had his money, kicked him over, and went through his pockets. Like Wilson and Irvin, Hogan did not see the victim with a weapon, nor did he observe any attempt by the victim to attack appellant.
Roberta Howitt was dating appellant at the time of the shooting. She testified that he appeared at her house at 4:00 a.m. on January 30, 1982, woke her up and asked her to guess what he had done. He said he had killed a man, but she did not believe him. Appellant related that he and Williams had been out gambling all day, and that he shot Williams in the face and chest because Williams refused his request for money. Appellant never mentioned the victim having a knife. Later that day, appellant borrowed Howitt’s car and disposed of the gun. Appellant was arrested the *908 following day. He later wrote to Howitt and said to “remember” that he told her the victim had a knife, which was untrue.
Officer Pullease testified that he spoke with appellant the day after the shooting, and appellant denied knowing anything about it. After taking additional statements from witnesses, appellant was arrested.
Officer Gary Ciani then testified with regard to giving appellant his Miranda warnings. During the course of this testimony, Ciani was asked whether appellant indicated that he did not understand his rights the first time they were read to him. Ciani responded: “No, sir. He replied, ‘Yes,’ that he understood, and he did not answer any questions at the initial time of arrest.” (emphasis added). Appellant’s counsel objected to the remark as an improper comment on appellant’s right to remain silent, and moved for a mistrial. Although the trial judge indicated that the comment was improper, he denied the motion, instead instructing the jury to disregard the statement.
A taped statement appellant made to the police after his arrest was then played for the jury. Appellant told the police that he and Williams had been out gambling and appellant had won some money. They ended up at SaRob’s. They had been drinking heavily. Appellant contended that he refused the victim’s request for money, and they both went outside at about 3:00 a.m. As they left the bar, the victim tried to put his hands in appellant’s pockets, and he then pushed appellant toward the corner of the building. Appellant wanted to get away from Williams because he knew Williams had a knife. Appellant then stated that Williams pulled the knife out, pushed appellant, and continued to demand money. Appellant backed into a crowd of people. Someone handed him a gun and indicated that he should take care of Williams. Williams was still coming at him, so appellant grabbed the gun and fired. The victim kept coming and grabbed for the gun. Appellant then fired again.
Appellant was found guilty as charged, and subsequently appealed. One of the grounds urged on appeal was that the trial court erred in denying appellant’s motion for mistrial. This court’s original opinion, filed April 13, 1983, rejected appellant’s contention, with a dissent by Judge Hurley. On rehearing this court reversed its original decision, holding that Ciani's statement was an improper comment on appellant’s right to remain silent, so that reversal was required. The state sought discretionary review, which was granted by the Florida Supreme Court. On July 17, 1986, the supreme court issued an opinion affirming this court’s finding of error, but directing this court to consider whether the error was harmless, in light of the supreme court’s recent decision in State v. DiGuilio, adopting a harmless error rule for comments on a defendant’s right to remain silent.
The issue which we consider at this time is whether it can be found beyond a reasonable doubt that the comment on appellant’s right to silence had no effect on the verdict.
“The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986), on rehearing.
The evidence in the present case clearly shows that there is no reasonable possibility that the error in admitting Ciani’s statement contributed to appellant’s conviction. Appellant claimed self-defense, contending in his statement to the police that Williams attacked him with a knife because Williams wanted money. The eyewitnesses to the shooting testified that the victim made no move toward appellant and had no weapon in his hands, and that it was appellant who was demanding money from the victim. In fact, this is consistent with the version of events appellant himself told his girlfriend only an hour after the shooting. Police officers who investigated the crime found *909 nothing which the victim might have been using as a weapon. The victim had a pocketknife, but it was closed and in his pocket. In view of the totality of evidence presented, appellant’s theory of self-defense could not reasonably have been believed.
Appellant argues in his supplemental brief that Ciani’s comment is not harmless error because it detracted from appellant’s theory of self-defense in that “[i]t effectively told the jury that the defendant did not instantaneously deny his guilt, but that he required an appreciable length of time to come up with his side of the story.” Appellant overlooks the fact that other testimony was properly admitted which would tend to make the same showing to' an even greater extent — Officer Pullease’s testimony that when he initially questioned appellant, pri- or to his arrest, appellant denied having any knowledge about the shooting. In view of this, we conclude that the evidence shows beyond a reasonable doubt that the comment by Ciani had no significant additional effect on the credibility of appellant’s assertion of self-defense.
We therefore withdraw our prior opinion on rehearing of December 28, 1988, and substitute this opinion holding the error in admitting the comment on appellant’s right to silence to be harmless. Accordingly, the conviction is affirmed.
AFFIRMED.
WALDEN and GUNTHER, JJ., concur.